# CHARLESTON

DODGE v. BROWN & HILL.

Submitted May 19, 1914.   Decided June 9, 1914.

1. ACCOUNT STATED—*What Constitutes—Logging Contract.*

    The rule that an account rendered and retained an unreasonable time, without objection, becomes an account stated, applicable as between merchant and merchant, and principal and agent, is inapplicable to monthly accounts rendered by one of the parties for money and goods advanced to the other pending the execution by the other of a logging contract. And at the completion of such contract the party to whom such accounts are so rendered is not estopped to dispute the correctness of items therein not previously objected to.   (p. 468).

2. SET-OFF AND COUNTERCLAIM—*Unliquidated Damages—Settlement of Logging Contract.*

    Where, pending the execution of such logging contract, one of the parties thereto executes to the other a deed of trust as security for money and goods advanced, the party holding such trust deed is not chargeable in settlement with the value of the property taken and sold by the trustee to pay a balance due him because of the claim of the trust debtor for unliquidated damages sustained by breaches of the logging contract by the trust creditor, such logging contract not providing therefor. ( p. 469).

3. SAME.

    In such cases the rule at law and in equity that unliquidated damages cannot be set off against a liquidated claim is applicable by analogy.   (p. 470).

Error to Circuit Court, Randolph County.

Assumpsit involving settlement of logging contract by James A. Dodge against M. M. Brown and others.   Judgment for plaintiff, and defendants bring error.

*Affirmed in part.   Reversed in part.   Remanded.*

W. B. & E. L. Maxwell, for plaintiff in error.

H. G. Kump, for defendant in error.

MILLER, PRESIDENT:

The action is assumpsit and involves settlement of a logging contract.   The declaration contains the common counts, also a special count on the contract in writing, alleging breaches

thereof by defendant and special damages accruing to plaintiff thereunder, all set forth in a bill of particulars, along with various items for logs gotten out, scaled and delivered, and tan bark peeled, piled and cured and delivered, pursuant to the contract; horses and harness sold defendants, and sundry other items charged to defendants.

Defendants pleaded the general issue and filed specifications of offsets, on which plea issue was joined by plaintiff, and on defendants' motion the case was referred to a commissioner, pursuant to section 10, chapter 129, serial section 4855, Code 1913, to state an account between the parties, and who, after taking a great deal of testimony, reported a balance in favor of plaintiff of $3,851.51, to which report defendants filed numerous exceptions.

On the return of this report, and by consent and agreement of the parties, a jury being waived, all matters of law and fact arising in the case were submitted to the court in lieu of a jury. Two of the numerous exceptions of the defendants were sustained. Whereupon on the trial of the action, the court, upon said report and amended report, and the evidence and the exhibits, and upon the arguments of counsel, found for plaintiff the sum of $3,605.55, and pronounced judgment therefor against defendants with interest and costs, to which judgment defendants obtained the present writ of error.

Said section 10, chapter 129, Code 1913, provides that the account so stated by the commissioner "shall be deemed prima facie correct, and may be given in evidence to the court or jury trying the case."

The only contested items covered by defendants' exceptions to the commissioner's report, and by their assignments of error in this court, not corrected by his supplemental report and the judgment of the court complained of, are: First, sundry items of alleged overcharges in defendants' bill of sets-off filed, as follows: Overcharge on steam loader, $355.26, discount and interest on plaintiff's pay roll, $665.55, fire wood, $15.00, boarding horses, $40.00. Second, the following items of damages for alleged breaches of the contract by defendants, and other items debited to defendants in plaintiff's bill of particulars, allowed by the commissioner and

carried into the judgment on review, namely, logs handled twice, 1,695,995 feet at $1.50 per thousand, $2,543.99; damages for failure to extend railroad, $750.00; damages for failure to furnish lumber for building camps, $750.00; goods taken by trustee under deed of trust, $1,063.50.

As to the first class of items, overcharges in defendants' account of sets-off, plaintiffs in error contend, first, that as they rendered monthly statements to plaintiff covering these items, from the beginning of the contract until its completion, without exception thereto by him until the bringing of this suit, these constituted an account stated, estopping him from contesting the correctness thereof, and that as these monthly statements showed the correct balances on the one side or the other each month, the last showing plaintiff indebted to them on the whole account in the sum of $2,032.19, defendants should have had judgment for this balance without any deductions whatsoever.

The rule invoked, while applicable between merchant and merchant, where it had its origin, and was originally applied, *Shaw* v. *Lobe*, 29 L. R. A. (N. S.) 333, note pp. 335, 336, and between principal and agent, *Shrewsbury* v. *Tufts*, 41 W. Va. 212, is inapplicable as between parties to an executory contract, and to the mutual accounts rendered by one party to the other, as in this case: *McGraw* v. *Trader's National Bank*, 64 W. Va. 509, 515, etc. And in those jurisdictions where an account rendered and retained an unreasonable time becomes an account stated it amounts to little more than a rule of evidence, casting upon the one to whom the account is rendered the burden of impeaching it for fraud, mistake or error, unless the opposite party has been prejudiced thereby, or his position altered. 1 R. C. L. 217.

Moreover, plaintiff's evidence shows or tends to show that plaintiff did object to various items in these monthly statements. This is conceded by defendants' witnesses, but it is claimed that all items objected to were corrected at the time. This fact is controverted. It must be assumed that the commissioner and the court below decided the controverted fact in favor of the plaintiff, and on well settled rules, even if the fact be important, we would not disturb the judgment on this count. The rule stated in *Shrewsbury* v. *Tufts, supra,* a

case of principal and agent, is that if within a reasonable time the objection is made by one or the other of the parties, and he calls upon the party rendering the account to explain it, he is not bound thereby. In the case at bar the monthly statements covered only a period from April, 1907, to October, 1909. This suit was promptly brought by the plaintiff, on the first day of October of the latter year, and before the last statement was rendered. So that even if the account was one between merchant and merchant, or principal and agent, it is doubtful whether the rule invoked would be applicable.

Now with respect to the particular items of the first class, we think the finding of the commissioner clearly right, that the overcharge on steam loader was clearly proven and properly charged back to defendants. The item of discount and interest was made up of various charges of discount, so called, on orders drawn by plaintiff upon defendants in favor of laborers and others, generally at the rate of five per cent. Plaintiff denied the correctness of these charges, and swore that he had not agreed to them. On the other hand the evidence of defendants tends to show such agreement. No provision therefor is contained in the written contract. We cannot say from the evidence that the finding of the commissioner and the judgment of the court thereon are not sustained by the proof. We are also of opinion from the evidence that the item of $15.00, for fire wood, was properly charged back to the defendant. As to the item, $40.00, for boarding horses, we do not think it is a proper counter charge against defendants. This item was debited to plaintiff in the monthly statements rendered, and was an item of expense incurred by the trustee, who took possession of the horses under the deed of trust executed by plaintiff in favor of the defendants pending the execution of the contract. The trustee took possession of these horses with other property covered by the trust, and the expense of keeping them was advanced by defendants. The theory of the commissioner and of the court below was that at the time this property was taken in hand by the trustee defendants were largely indebted to plaintiff for damages sustained by him for breaches of the contract by defendants, and that the action of the trustee was therefore unwarranted and tortious, the same theory upon which the

commissioner and the court below credited plaintiff with the sum of $1,063.50, in the second class of items as for goods taken by the trustee under the deed of trust, in place of crediting him only with the net proceeds of the sale thereof, to be hereafter referred to.

So far as the record shows these goods were taken by the trustee without objection by plaintiff. And on the face of the accounts rendered, not considering the unliquidated damages claimed, plaintiff was indebted to defendants in excess of the goods taken and sold, and covered by the deed of trust. So that unless because of plaintiff's claims for unliquidated damages defendants were not entitled to enforce the deed of trust, we do not think the taking of the goods by the trustee was illegal or tortious entitling plaintiff to charge defendants with their value instead of the net proceeds of the sale thereof, and that the $40.00 item, for boarding horses, covered in the first class of items, and the item of $1,063.50, for goods taken by the trustee, covered by the second class of items, were improperly debited to defendants.

To reach a correct conclusion therefore as to these items of unliquidated damages we must determine what is the law of sets-off in such cases. It is not pretended that the logging contract provided for such items of offsets, nor that there was any independent or subsequent contract allowing the same. The rule in such cases both in law and equity is, that unliquidated damages cannot be pleaded or set off against a liquidated claim. *Clark's Cove Guano Co.* v. *Appling,* 33 W. Va. 470; *Bunting* v. *Cochran,* 99 Va. 558, 562; *Tidewater Quarry Co.* v. *Scott,* 105 Va. 160; *Ashland Coal & Coke Co.* v. *Hull Coal & Coke Corporation,* 67 W. Va. 503, point 7. True, as the case last cited holds, such a claim may be proved in bar or reduction of plaintiff's demand if it grows out of the contract on which plaintiff sues, but no recovery over in favor of defendant can be had thereon. No doubt under this authority if plaintiff had been sued by defendants plaintiff might have recouped in damages in such action to the extent of defendants' demand, and perhaps he might on equitable grounds have also enjoined the sale of his property by the trustee, but he did not take this course. He chose to allow the trustee to sell the property and to pay

the net proceeds on the apparent balance due defendants. Is he now entitled to charge defendants with the value of the property taken rather than the net proceeds of the sale? We do not know upon what principle he can be permitted to do so. Defendants controverted plaintiff's claims for damages; they were unliquidated; but for these claims he was in fact indebted to them, not to the full amount of the balance claimed, as we have and will show, but in some sum about equal to the value of the goods taken as charged by the commissioner against defendants.

Now with respect to the second class of items, it is conceded that defendants breached the contract in at least two particulars, one in failure to furnish trucks, on which plaintiff was required to load the logs, and by reason of which he was required to handle a large portion of the logs twice, damaging him to the extent of $1.50 per thousand feet, covered by the item $2,543.99, allowed him by the commissioner; second, in failing to extend their railroad, by reason of which plaintiff was delayed in loading the bark which he was required to peel, pile, cure and deliver on the cars. As to the first of these items we think the evidence fully supports the finding of the commissioner and the judgment below thereon.

As to the second item, $750.00, damages for failure to extend the railroad, we find no evidence sufficient to support the same, and are of opinion this item was improperly allowed by the commissioner, and that defendants' exception thereto should have been sustained. The only evidence relied on by plaintiff to support this item is that he was delayed in delivering the bark on cars, and in getting credit for the contract price therefor, but the proof shows no damage therefrom. Defendants advanced him money far beyond the amount of any such credits and on which no interest was allowed them, and having had the use of the money we do not see how plaintiff was damaged.

As to the item, damages for failure to furnish lumber for building camps, we think the evidence supports the finding of the commissioner. Plaintiff's evidence on this item goes into detail, showing time lost in going to and from his work

with men and teams, and we are of opinion defendants' exception to this item was properly overruled.

As to the last of this class of items, goods taken by the trustee under the deed of trust, we have already indicated the opinion that it was not properly chargeable against defendants, and that their exceptions to the commissioner's report should have been sustained.

Of course plaintiff is entitled to credit for the net proceeds of the sale by the trustee, which the evidence shows amounted to $433.42. He does not appear to have been given credit for this amount, except as covered by the value of the goods and property taken by the trustee. Of course if defendants were chargeable with the value of the goods so taken they would not also be chargeable with the net proceeds of the sale thereof taken by the trustee.

Finding no other errors in the judgment we are of opinion to reverse the same in so far as in conflict herewith, but in all other respects to be affirmed, and to remand the case with directions to restate the account between the parties in so far as it may be necessary to ascertain the true balance and to give plaintiff proper judgment therefor.

The defendants having substantially prevailed in this court will have a judgment for their costs incurred in the prosecution of their writ of error.

*Affirmed in part. Reversed in part. Remanded.*